## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| **RACHEL BUTRIM et al.** | * | |
| | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **V.** | * | |
| | * | **CIVIL NO. 1:25-cv-00796-MJM** |
| **MAYOR AND CITY COUNCIL** | * | |
| **OF BALTIMORE** | * | |
| | * | |
| **Defendant** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MAYOR AND CITY COUNCIL OF BALTIMORE'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Mayor and City Council of Baltimore submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Complaint. For the reasons set forth below, the City asks that Plaintiffs' Complaint be dismissed with prejudice for failure to state a claim.

Dated: March 18, 2025

Respectfully submitted,

EBONY M. THOMPSON
City Solicitor

/s/ *Hanna Marie C. Sheehan*
HANNA MARIE C. SHEEHAN (#19531)
Chief Solicitor
Baltimore City Law Department
100 Holliday Street, Suite 101
Baltimore, Maryland 21202
Phone: 410-396-4431
Fax:    410-547-1025
Hanna.Sheehan@baltimorecity.gov
*Counsel for Defendant Mayor and City*
*Council of Baltimore*

**Table of Contents**

**INTRODUCTION**................................................................................................ 3

**STANDARD OF REVIEW** .............................................................................. 4

**ARGUMENT** ................................................................................................... 5

   **I.**    **Plaintiffs' Constitutional Claims Fail as a Matter of Law** ........................... 5

      **a.**    **The Fourth Circuit Requires a Plausible Allegation of an Intent to Harm to Uphold a 14th Amendment State-Created Danger Claim** ................................. 5

      **b.**    **Plaintiff's Complaint does not Plausibly Allege that the City Intended to Harm the City Firefighters** ......................................................................... 11

      **c.**    **Claims of Fraudulent Inducement Must be Pled with Particularity** ..................... 14

      **d.**    **Plaintiffs Have Failed to Plead Facts Sufficient to Support Their Claims of Fraudulent Inducement.** ...................................................................... 16

      **e. Plaintiffs' Complaint Must be Dismissed Because a *Monell* Claim Cannot Stand Alone** ........................................................................................ 21

   **II.**    **Plaintiffs' State Law Claims Should be Dismissed as a Matter of Law** ..................... 21

      **a.**    **Plaintiffs' State Law Claims are Covered by the Maryland Workers' Compensation Act** ............................................................................. 21

**CONCLUSION** ............................................................................................... 25

## INTRODUCTION

This matter involves a work-place accident at 205 South Stricker St. in Baltimore City (the "Property"). On January 24, 2022, three firefighters died at the Property while responding to a fire. Plaintiffs in this matter all sue as representatives of these deceased individuals, with the exception of one injured firefighter, who sues on his own behalf. Plaintiffs bring a Fourteenth Amendment "state-created danger" (Count I) claim as well as negligence (Count II), survivor action (Count III), and wrongful death claims (Count IV). None of these Counts state a claim upon which relief can be granted and therefore Plaintiffs Complaint should be dismissed.

Plaintiffs' Complaint attempts to convert this tragic work-place accident into a constitutional case by asserting a claim against the City under the Fourteenth Amendment's "state-created danger" doctrine. This doctrine is so limited that the U.S. Court of Appeals for the Fourth Circuit (the "Fourth Circuit") recently noted that it has not upheld a state-created danger claim in over 20 years. *Turner v. Thomas*, 930 F.3d 640, 646 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 905, 205 L. Ed. 2d 461 (2020). Such claims are so consistently rejected because they must be supported by allegations that the government *intentionally* and *deliberately* injured its employee. *Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317, 322 (4th Cir. 2012). Indeed, these claims have been rejected multiple times in this Circuit in circumstances where a firefighter tragically dies in the course of their duty. *Id*; *see also Waybright v. Frederick Cty., MD,* 528 F.3d 199 (4th Cir. 2008). Like in those cases, Plaintiffs' Complaint here alleges only a series of acts or omissions that led to a workplace accident. The Complaint does not – and cannot – plausibly allege that the City *intended* the deaths of its valued employees, nor that the City fraudulently induced those who were injured into the circumstances that led to their injuries.

Plaintiffs also bring state law claims in the form of negligence, survival action, and wrongful death claims. It is undisputed that Plaintiffs were working when the incident at the Property occurred. As such, Plaintiffs' state law claims are improper as their right to relief lies with the Maryland Workers Compensation Act, ("WCA"), which "provides the exclusive remedy to an employee for an injury or death arising out of and in the course of employment." *McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94, 99 (D. Md. 2011). Plaintiffs have also failed to bypass the exclusivity of the WCA as they have failed to allege that the City's behavior was intentional or deliberate.

For these reasons and those discussed *infra*, the City respectfully requests that Plaintiffs' Complaint be dismissed with prejudice and without leave to amend.

## STANDARD OF REVIEW

A complaint is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not "state a claim upon which relief can be granted." This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, the court is not obligated to accept a plaintiff's conclusory allegations regarding the legal effect of the facts alleged. *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994). Rather, a plaintiff has an obligation to provide grounds for his entitlement to relief and that obligation requires more than labels, conclusions, or a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." *Qwest Communications Corp. v. Maryland-National Capital Park & Planning Comm'n*, 553 F. Supp. 2d 572, 574 (D. Md. 2008) (*quoting Twombly*, 550 U.S.

at 555). "Nor does a Complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft*, 129 S. Ct. at 1949 (internal quotation marks and citation omitted).

Thus, in order "[t]o survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (*emphasis added*) (*quoting Twombly*, 550 U.S. at 570). The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id*. Rather, it requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief, *i.e.*, the "plausibility of 'entitlement to relief.'" *Id.* (*quoting Twombly*, 550 U.S. at 557) (emphasis added).

## ARGUMENT

### I.    Plaintiffs' Constitutional Claims Fail as a Matter of Law

#### a.    The Fourth Circuit Requires a Plausible Allegation of an Intent to Harm to Uphold a 14th Amendment State-Created Danger Claim

Count I of Plaintiffs' Complaint seeks recovery based on the 14th Amendment's state-created danger doctrine. A cursory review of Supreme Court and Fourth Circuit precedent reveals that those claims fail as a matter of law. The state-created danger doctrine is a limited exception to the general rule that "a defendant's mere failure to act does not give rise to liability for a due process violation." *Turner*, 930 F.3d at 644. In the government employment context, the state-created danger doctrine requires "affirmative acts, not merely . . . inaction or omissions." *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015). The Fourth Circuit has repeatedly recognized that "the state-created doctrine is narrowly drawn, and the bar for what constitutes an 'affirmative act' is high." *Turner,* 930 F.3d at 645. This is particularly true in attempts to convert tort claims alleging negligence or recklessness into constitutional cases. In these cases, federal courts are acutely

aware of the danger in allowing the due process clause to "supplant[] state tort law in almost any suit alleging that a local official has caused harm." *Waybright v. Frederick Cty., MD,* 528 F.3d 199, 204 (4th Cir. 2008). As a result, "in case after the case, the Supreme Court has rejected this prospect and spurned any approach to the Fourteenth Amendment that would make it 'a font of tort law to be superimposed upon'" state tort law principals. *Id.*, quoting *Paul v. Davis,* 424 U.S. 693, 701 (1976).

The Fourth Circuit clarified the narrow boundaries of the state-created danger doctrine in *Pinder v. Johnson,* where the court held that the doctrine does not apply where "the state did not 'create' the danger, it simply failed to provide adequate protection from it." 54 F.3d 1169, 1175 (4th Cir. 1995). The *Pinder* court recognized that the government does not "commit[] an affirmative act or create[] a danger every time it does anything that makes injury . . . more likely." *Id.* Following the narrow confines on the doctrine drawn by the *Pinder* court in 1995, the Fourth Circuit has "never issued a published opinion recognizing a successful state-created danger claim." *Turner*, 930 F.3d at 646. Instead, the court has consistently rejected such claims and repeatedly emphasized the "exactingly high bar for what constitutes affirmative conduct sufficient to invoke the state-created danger doctrine." *Id.*

State-created danger claims so consistently fail at the pleading stage because the Fourth Circuit requires a showing that the government *intentionally* and *deliberately* harmed its employee. *See, e.g.*, *Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317, 322 (4th Cir. 2012) (Plaintiff "could not, without alleging an intent to harm, maintain an action for a substantive due process violation.") *Waybright v. Frederick Cnty., MD*, 528 F.3d 199, 205 (4th Cir. 2008)("For a due process challenge to executive action to succeed, the general rule is that the action must have been *intended to injure* in some way unjustifiable by any government interest.") (emphasis added). This

principal is drawn from the Supreme Court's decision in *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992), a case that closely mirrors the claims asserted in the instant matter.

In *Collins*, Larry Collins, an employee in the city of Harker Heights' sanitation department, died of asphyxia after entering a manhole to unstop a sewer line. *Id.* at 119. Mr. Collins' widow brought an action under 42 U.S.C. 1983, alleging that Mr. Collins "had a right under the Due Process Clause of the Fourteenth Amendment to be free from unreasonable risks of harm . . . and . . . to be protected from the [city's] custom and policy of deliberate indifference toward [its employees'] safety." *Id.* at 126 n. 9. The suit further alleged that the City had "violated that right by following a custom and policy of not training its employees about the danger of working in sewers and not providing safety equipment and warnings." *Id.* Finally, the complaint alleged that the city had "systematically and intentionally failed to provide the equipment and training required by a Texas statute." *Id.* at 118.

In analyzing the claim, the Supreme Court first noted that the complaint "does not charge the city with willful violations of Collins' rights," and "does not claim that the city or any of its agents deliberately harmed her husband." *Id.* at 125. Instead, the complaint was premised on "the more general allegation that the city deprived him of life and liberty by failing to provide a reasonably safe work environment." *Id.* at 125-26. The Court found that this allegation did not state a claim under the Fourteenth Amendment, holding that "[n]either the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." *Id.* at 126.

The Court further noted that the plaintiff's claim that the federal constitution mandated a minimum level of workplace safety was "unprecedented," and substantively distinct from the

Fourteenth Amendment protections prior recognized by the Court, such as protections for pre-trial detainees, persons in mental institutions, or persons under arrest. *Id.* at 127. The Due Process guaranteed by the Constitution "includes a continuing obligation to satisfy certain minimal custodial standards," the Court held, but does not provide protection for an employee who voluntarily reports to work. *Id.* at 128.

Moreover, the *Collins* Court was "not persuaded that the city's alleged failure to train its employees, or warn them about known risks of harm, was an omission that can properly by characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* The Court noted that the claim was "analogous to a fairly typical state-law tort claim," and that "the Due Process Clause does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Id.* The Court's decision rested on the principal that "[d]ecisions concerning the allocation of resources to individual programs, such as sewer maintenance, and to particular aspects of those programs, such as . . . training . . . involve a host of policy choices that must be made by local representatives, rather than by federal judges." *Id.* at 128-29.

Applying *Collins*, the Fourth Circuit has rejected attempts to cloak workplace safety tort claims as constitutional violations. In *Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317 (4th Cir. 2012), the survivors and estate of Racheal Wilson, a Baltimore City Fire Department recruit, brought suit against the City after Ms. Wilson tragically died during a "live burn" training exercise in a vacant building in Baltimore City. As here, plaintiffs alleged that the City "violated Wilson's substantive due process rights by staging the exercise with *deliberate indifference* to Wilson's safety, so as to shock the conscience." *Id.* at 319 (emphasis in original). More specifically, the *Slaughter* plaintiffs alleged that City officials knew that the building used was unsuitable for the

exercise; intentionally made the premises more susceptible to dangerous fires; did not properly equip recruits; provided inadequate water supply; and violated National Fire Protection Association standards. *Id.* at 320. Taken together, plaintiffs alleged that "these and other conditions and circumstances amounted to willful violation of nationally-recognized safety standards." *Id.* (quotations omitted).

The Fourth Circuit, applying *Collins*, upheld dismissal of the action. As the Supreme Court did in *Collins*, the court differentiated the case from one in which the government has a custodial relationship with the plaintiff, such as a pretrial detainee or person under arrest, noting that in those circumstances, a "deliberate indifference to the care of persons in . . . custody can shock the conscience for purposes of finding a substantive due process violation." *Id.* at 321. The court made clear, however, that "this standard does not apply to persons in an employment relationship with the government." *Id.* The court acknowledged that the plaintiffs had alleged that the Fire Department had "failed to provide Wilson with safe working conditions, proper equipment, proper training, and particularized notice about risks of which Fire Department officials had actual knowledge." *Id.* at 322. The court found these allegations were insufficient to state a claim, however, holding:

> [I]n the voluntary employment context the plaintiffs have not alleged arbitrary (in the constitutional sense) or conscience-shocking conduct because they did not assert that the Fire Department *intended to harm* Wilson, as would be necessary to establish a substantive due process violation.

*Id.* at 322 (emphasis in original). While it was true that "the Baltimore City Fire Department created the danger" the Court held that "this fact does not satisfy any element of the standard the Supreme Court has articulated for showing a substantive due process violation with respect to a government employee." *Id.* As such, the Fourth Circuit upheld the trial court's application of "a standard requiring the showing of intent to harm" and the trial court's conclusion "that 'however

reckless' the Fire Department may have been, its actions did not 'rise to the level of a constitutional violation.'" *Id.* at 319.

This principle was most recently applied by this Court last year in *Est. of Cunningham v. Mayor & City Council of Baltimore*, 665 F. Supp. 3d 725 (D. Md. 2023). There, Trina Cunningham, a City employee, tragically fell to her death at the Patapsco Wastewater Treatment Plant. Ms. Cunningham's estate sued the City alleging a Fourteenth Amendment state-created danger claim. The allegations mirrored those asserted here, with plaintiff alleging that the City "refused to inspect and maintain walking-working surfaces" at the facility, "refused to correct or repair damages [sic] walking surfaces," and refused to abate "numerous known and foreseeable dangers or to take any precautions to prevent death or serious bodily injury." *Id.* at 730. Plaintiffs framed their allegations as deliberate and intentional acts by the City, asserting that the City "deliberately chose not to repair or maintain the . . . facility or train their employees," and that "Ms. Cunningham's death was due to the compounded intentional decisions" of the City. *Id.* at 730, 737.

This Court dismissed the case. Applying *Slaughter*, the Court found that "Plaintiffs must show here that the City defendant intended to harm Ms. Cunningham to establish a substantive due process violation in this case." *Id.* at 736. The Court noted that the Complaint described "negligent, or even egregious, conduct by the City Defendants," but nonetheless "agree[d] with the City Defendants that the allegations in the amended complaint do not show the City Defendants intended to harm Ms. Cunningham." *Id.* at 737. In so finding, the court emphasized that intentional harm, not deliberate indifference, was the correct standard for claims based on an unsafe work environment. *Id.* ("The Court is also not persuaded by Plaintiffs' argument that the deliberate indifference standard should apply to their state-created danger claim.").

Important here, the Court found that plaintiffs' references to deliberate or intentional acts by the City were insufficient to state a claim. Although plaintiffs alleged intentional acts that led to an accident, this did not amount to a showing "that the City *intended* for Ms. Cunningham to fall through the grating at the . . . facility." *Id.* (emphasis in original). In so finding, the court noted that "Plaintiffs' argument that the City Defendants' intent to harm can be measured by the natural and probable consequences of their actions is equally unavailing." *Id.* at n. 3. This ruling is consistent with *Slaughter*, which made clear that the standard requires an action taken *"with the purpose of causing harm to"* Plaintiff. *Slaughter*, 682 F.3d at 319 (emphasis in original).

The Fourth Circuit has therefore clearly articulated that in the government employment context, a plaintiff must allege a *deliberate intent* to harm an employee to establish a state created danger due process claim. This standard has been consistently and strictly enforced by trial courts in the Fourth Circuit. *See, e.g., Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 735 (D. Md. 2013) ("[T]he employee plaintiff must show that the governmental employer defendant '*intended to harm*' its employee in order to 'establish a substantive due process violation'"); *Evans v. Maryland Nat'l Cap. Parks & Plan. Comm'n*, No. CV TDC-19-2651, 2020 WL 6703718, at *13 (D. Md. Nov. 13, 2020) ("In the voluntary employment context, a plaintiff must allege intentional harm, not mere deliberate indifference."); *Smith v. City of Greensboro*, No. 1:19CV386, 2020 WL 1452114, at *15 (M.D.N.C. Mar. 25, 2020) ("Outside of the custodial context, government conduct normally does not shock the conscience (at least not in the constitutional sense) unless it was 'intended to injure . . .'"). As described *infra*, Plaintiffs' Complaint fails to meet this standard.

     **b.  Plaintiff's Complaint does not Plausibly Allege that the City Intended to Harm the City Firefighters**

Plaintiffs' Complaint is long and sprawling, replete with unsubstantiated claims regarding City policies dating back to the early 20th Century. The second half of it also closely mirrors the Complaint originally filed in Case No. 1:24-CV-01284.  Now, however, Plaintiffs have reorganized some parts of the Complaint, added others, and removed most of the language referring to their allegations as being made "upon information and belief."  They did not remove some of the more outlandish allegations, such as the entirely unsupported claim that the City included the Property in a "pay to play and profit-sharing scheme."  Compl. at ¶ 16.  These vague allegations of nefarious activity are supported only by a general statement that the City has a "long and inescapable history of public corruption."  *Id*. at ¶ 64.  Other allegations purportedly showing City "corruption" include a description of the City's public efforts to work with non-profit partners to develop vacant homes, accompanied by the unsupported and conspiratorial allegation that fees collected under related grant agreements were "likely kept for personal gain."  *Id.* at ¶ 68.  Finally, throughout the Complaint, Plaintiffs alleged no less than five times that the City outright "lied" to the Plaintiffs.  *Id.* at ¶ ¶ 9, 22–23, 26.  These assertions, even if supported, would be insufficient to state a claim for state-created danger, but it is worth noting that these are exactly the type of "naked assertions devoid of further factual enhancement" that cannot support a claim under any circumstance.  *Ashcroft*, 129 S. Ct. at 1949

Aside from these vague and unsupported claims, the Complaint is based on the same allegations as in *Slaughter* and *Cunningham*: that the City knew or should have known that the condition of the Property was dangerous but disregarded that danger.  Compl. at ¶ 32.   More specifically, the Complaint alleges that the City "knew and failed to tell" firefighters that the property was vacant and potentially structurally unsound.  *Id.* at ¶ 15.  Like in *Cunningham*, Plaintiffs rely on an OSHA report regarding the potential dangers of vacant buildings, and allege

that the City "intentionally disregarded" the risk posed to firefighters employed by the City. *Id.* at ¶ 32. Ultimately, the Complaint is premised on the allegation that "the City created the danger" through its neglect of the building and failure to warn, "and then intentionally exposed the Plaintiffs to that danger." *Id.* at ¶ 31.

As described *supra*, the Supreme Court and Fourth Circuit have consistently rejected state-created danger claims based on similar allegations. In *Slaughter*, plaintiff alleged that the Fire Department had created a known danger in a vacant building by tearing down walls, scattering debris, and adding flammable excelsior to the walls. *Slaughter*, 682 F.3d at 320. These actions, plaintiff alleged, made the vacant building "unsuitable" for a training exercise that led to the death of a recruit. *Id.* In *Cunningham*, plaintiffs alleged that the City disregarded a series of known dangers at a wastewater treatment facility, failed to disclose or repair those known dangers, and thereby caused the death of an employee. More specifically, the *Cunningham* Plaintiffs alleged that MOSH had found 24 "serious violations" related to the maintenance and inspection of the facility, and that these violations led directly to the death of a City employee. *Cunningham*, 665 F. Supp 3d. at 729-30. Finally, in *Harker Heights*, the plaintiff alleged that the City systematically failed to train its employees, provide them with proper safety equipment, or warn them regarding known dangers of working in the sewer system. *Harker Heights,* 503 U.S. at 117-18. In each of the cases, like here, plaintiffs argued that a systematic failure to train, maintain, and warn was so "conscious shocking" that it rose to the level of a constitutional violation. In each case, this argument was rejected and the case dismissed.

Indeed, the allegations in *Slaughter and Waybright* were a degree worse than those made in this case, as the City directly controlled the environments in which the death occurred – in *Slaughter* a vacant property used to train recruits, and in *Waybright* a closely supervised firefighter

13

training facility.  In *Slaughter*, the complaint alleged that the City had actively created the danger by adding flammable materials to the walls of a vacant building and tearing down wallboard. *Slaughter*, 682 F.3d at 320.  In *Waybright*, the complaint alleged that a fire recruit was forced to run in high temperatures during a training exercise, a command that allegedly lead to his death. *Waybright* 528 F.3d at 202-03.  Yet in both cases, despite this alleged intentional conduct, the Fourth Circuit held that a state-created danger claim could not stand because there was no plausible allegation that the City intended to harm its employees.  *Slaughter*, 682 F.3d at 319; *Waybright* 528 F.3d at 205-06.

Like in *Slaughter*, *Cunningham* and *Harker Heights*, Plaintiffs' Complaint does not allege that the City of Baltimore intended the City Firefighters' injury or death.  The Complaint only alleges a series of oversights and failures to warn, which Plaintiffs maintain lead to a tragic accident.  The Complaint's allegation that the City "intentionally exposed the Plaintiffs to . .. danger" is insufficient, because it does not plausibly allege that the City intended the injury or death of *any* firefighter.  Such a serious allegation must be supported by more than the speculative evidence of alleged omissions presented by Plaintiffs' Complaint.   Moreover, Plaintiffs' vague allegations of corruption are both factually unsupported and irrelevant to the state-created danger test. Ultimately, Plaintiffs' Complaint attempts to achieve exactly what the Fourth Circuit has cautioned against: transforming a state common law tort claim into a constitutional action. *Waybright*, 528 F.3d at 204.  While Plaintiffs may consider the claimed conduct to be egregious, because no intentional harm is alleged, the Complaint fails to state a Fourteenth Amendment claim against the City.  *Slaughter*, 682 F.3d at 322.

### c.  Claims of Fraudulent Inducement Must be Pled with Particularity

Although Plaintiff's do not attempt to bring a specific count for fraud, as noted by the Court in dismissing Plaintiff's first Complaint, "Plaintiffs claim, in essence, that Plaintiff Firefighters were fraudulently induced into an employment relationship with the City." *Butrim v. Mayor & City Council of Baltimore*, No. CV MJM-24-1284, 2024 WL 5055196, at *7 (D. Md. Dec. 9, 2024). In order to state a claim for fraudulent inducement, a plaintiff must show:

> (1) a material representation of a party was false, (2) falsity was known to that party or the misrepresentation was made with such reckless indifference to the truth as to impute knowledge to him, (3) the misrepresentation was made with the purpose to defraud (scienter), (4) the person justifiably relied on the misrepresentation, and (5) the person suffered damage directly resulting from the misrepresentation.

*Airport Square Holdings, LLC v. GCCFC 2007-GG9 Colomary Facilities, LLC,* Civ. No. JFM-16-02883, 2017 WL 639230, at *6 (D. Md. Feb. 16, 2017) (citing *Lawley v. Northam,* Civ. No. ELH-10-1074, 2011 WL 6013279, at *9 (D. Md. Dec. 1, 2011). All five of these elements *must* be demonstrated in order to state a claim for fraudulent inducement. "Fraud is a scienter tort consisting of the representation of a material fact that is false, deceptive and injurious." *Lawley v. Northam*, Civ No. ELH-10-1074, 2011 WL 6013279, at *19 (D. Md. Dec. 1, 2011) (*quoting Fuller v. Horvath,* 42 Md.App. 671, 685, 402 A.2d 134, 142 (1979)). Here, through the allegations in their Complaint, Plaintiffs seek to assert a claim for fraudulent inducement to sidestep voluntary employment with respect to the state created danger doctrine.

Claims of fraudulent inducement must meet the heightened pleading standards required by Rule 9(b). As this Court previously stated with respect to this matter the first time it was brought, Rule 9(b) requires that averments of fraudulent inducement be supported by stating "with particularity the circumstances" constituting fraud. Fed. R. Civ. P. 9(b); *see also Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp.,* 15 F.3d 327, 331 (4th Cir. 1994)(affirming dismissal of fraudulent inducement for failure to plead with particularity). "[I]f particular averments of fraud

are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim. The court should then examine the allegations that remain to determine whether they state a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104–05 (9th Cir. 2003); *see also Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth*, 99 F.4th 928, 945 (7th Cir. 2024) ("[I]f a court thinks a plaintiff has failed to plead fraud, it must 'disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated.'") (quoting *Lone Star Ladies Inv. Club*, 238 F.3d at 368). *See* Case No. 1:24-CV-01284; Memorandum Opinion. Further, such specificity must be pled in the facts of the Complaint – affidavits do not suffice to meet the specificity standard as they are not formal pleadings. Fed. R. Civ. P. 9(b); Fed. R. Civ. P. 7; *see also Miller v. Gain Fin., Inc.,* 995 F.2d 706, 709 (7th Cir. 1993) (finding that reliance on affidavits for the particularity requirement is insufficient, as affidavits are not formal pleadings).

### d. Plaintiffs Have Failed to Plead Facts Sufficient to Support Their Claims of Fraudulent Inducement.

This Honorable Court previously stated that Plaintiffs failed to meet the threshold for making a claim of fraudulent inducement with respect to their employment relationship with the City. *See* Memorandum Op. pp. 15–17. In an attempt to stave off dismissal, Plaintiffs now attempt, once again, to plead that they were fraudulently induced into their employment with the City based on the City's alleged misrepresentations regarding the Code X-Ray program ("the Program). Compl. at ¶¶ 9-34. Plaintiffs' second attempt to meet the threshold fails for the same reasons as their first.

Rule 9(b) states that when "alleging fraud…a party **must** state with particularity the circumstances constitution fraud." Fed. R. Civ. P. 9(b). "The time, place and misrepresentation(s) upon which the plaintiffs relied must be alleged to further satisfy FRCP 9(b). Further, the identity

of the person making the alleged misrepresentations must also be given, as well as what that person gained by the misrepresentation." *Vennittilli v. Primerica, Inc.*, 943 F. Supp. 793, 799 (E.D. Mich. 1996) (internal citations omitted). In order to satisfy the particularity requirement under Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *S.E.C. v. Apolant*, 411 F. Supp. 2d 271, 276 (E.D.N.Y. 2006)(internal quotations and internal citations omitted). Alleging fraudulent acts with "particularity" in order to meet the requirements of Rule 9(b) "means disclosing such matters as "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Franz v. Iolab, Inc., a div. or subsidiary of Johnson & Johnson, Inc.*, 801 F. Supp. 1537, 1541 (E.D. La. 1992) (internal citations omitted). In the current Complaint, Plaintiffs have once again failed to plead with specificity the facts required for fraudulent inducement. Instead, they accuse the City of "lying,"[1] without support of specification and include an affidavit to support their claims, neither of which is sufficient to vault the high hurdle required by Rule 9(b).

In order to prove fraudulent inducement, Plaintiffs must provide specific facts to fulfill all five factors of the test. In an effort to do so, Plaintiffs have taken facts contained later in their Complaint, reworded them utilizing inflammatory and editorializing language, and moved them to an earlier section in the pleading. What they have *not* done is provide actual facts supporting their contention that the City intended to defraud any of the Plaintiffs into entering into and maintaining employment as Baltimore City Firefighters. Rather, they have restated, albeit using different

---

[1] Plaintiffs outright accuse the City of "lying" no less than five times in their Complaint. *See* Compl. at ¶ ¶ 9, 22–23, 26. Such allegations are not only misleading to this Court, but are also unprofessional and add no substance to their allegations beyond existing to be inflammatory.

terminology, what has already been discussed *supra* – that is, that there are no facts indicating that the City intended the injury or death of any firefighters.

The City is a municipal corporation—human actions must be identified to plead fraud. Plaintiffs have failed at the most basic element of Rule 9(b)'s requirement that they state "with particularity the circumstances constituting fraud…"  Under the rule, a plaintiff alleging claims sounding in fraud must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 731* (4th Cir. 2010) (internal citations and quotations omitted). In other words, "Rule 9(b) requires plaintiffs to plead the who, what, when, and how: the first paragraph of any newspaper story." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (internal citations omitted).  Here, Plaintiffs' allegations of fraud do not include any specific facts regarding: 1) who made the allegedly fraudulent statements; 2) when the statements were made; or 3) exactly what was said.  Plaintiff's fraudulent inducement claims fail for this reason alone.

Instead, Plaintiffs attempt to support their fraud claims with the same vague generalizations previously rejected by the Court.  *Butrim v. Mayor & City Council of Baltimore*, No. CV MJM-24-1284, 2024 WL 5055196, at *8 (D. Md. Dec. 9, 2024) ("Here, the Complaint is silent as to the particular circumstances of the City's alleged misrepresentation, such as the time and place of the misrepresentation and the identity of the person who made it.").  They allege the City "instituted a policy of keeping firefighters uninformed of [the] fact" that the Program had been discontinued and also state that the City "intentionally concealed" information regarding the status of 205 South Stricker Street as a condemned property.  Compl. at ¶¶ 14–15.  They further allege that the City "intentionally" discontinued the Program and that information about it being discontinued was "in

a fraudulent fashion, withheld." Compl. at ¶ 17. Plaintiffs then fail to state any information indicating intentional behavior on the part of the City with regards to "discontinuing" the Program, nor do they provide how information was "fraudulently" withheld. Plaintiffs also allege they were "repeatedly assured" that "they would not be ordered into structurally unsafe condemned buildings" but then *again* decline to provide any specifics of when these assurances were delivered and who delivered them. Compl. at ¶ 22. Baseless allegations notwithstanding, merely stating that an action was taken with "intent" does not intent make – Rule 9(b) requires that specificity exist with respect to such assertions.

Perhaps the crux of Plaintiffs fraudulent inducement claim is their wildly speculative statement that "the City lied about Code X-Ray to firefighters including Plaintiffs…to prevent a mass exodus from BFD in addition to creating an environment that forced Plaintiffs and other firefighters to fight all fires from an interior approach as opposed to having a 'reason' for not entering a dwelling on fire." Compl. at ¶ 23. This particular assertion demonstrates precisely that Plaintiffs are *unable* to support their claims with any specificity. Rather, they reduce their allegations to accusations of "lying" and speculation about the City's actions. As discussed *supra*, Plaintiffs must allege that the City intended to deceive them *specifically* – presumably in both the employment context and in the context of performing their duties as firefighters. Rather than doing so, they instead come just short of accusing the City of maintaining a vast conspiracy to conceal information about the Program in order to "trick" firefighters into remaining employed with the City so that the City can purposely send them into dangerous structures. This is further bolstered by Plaintiffs superfluous inclusion of statements regarding political corruption in the City and "schemes" with developers to develop low-income areas. Compl. at ¶¶ 63 – 74.

Other than the broad claims that the City "lied" and "concealed information," Plaintiffs have attached an affidavit from Plaintiff McMaster.  Ignoring the fact that the affidavit is not in the proper format, it also fails to provide information indicating that Plaintiff McMaster relied *specifically* on an assertion from the City with regards to the Program when the City offered him employment and he accepted.  *See* Md. Rule 1-304 (providing proper form and language for an affidavit).  Plaintiff McMaster's affidavit fails to indicate when or who relayed any information about the Program to him – either before or during his time employed by the BFD.  He merely makes a statement that he "relied on the City's assurances" when he accepted employment, but fails to state when those assurances were first given to him beyond "during" his employment.  *See* Compl. at Ex. 1.  Further, given that McMaster alleges that the statements were made to him, these facts are not uniquely in the knowledge of the City.

Further, he states that had he or "his fellow firefighters" known about the discontinuation of the program, they would never have entered 205 South Stricker Street on the day of the incident. *Id*. But neither the Complaint nor the affidavit contains any facts describing what other firefighters were told about the program, when they were told, or by whom. Barring the fact that Plaintiff McMaster *cannot* affirm what other parties would have done, this assertion still does not rise to the level of a fact that can be averred to. He also states that had he known the City had "misrepresented" the Program, that he would have resigned from the BFD.  *Id*.  Again, Plaintiff McMaster fails to indicate when any such misrepresentations were made or who made them. Finally, even with the inclusion of this affidavit, Plaintiffs claims with respect to fraudulent inducement still fail as pursuant to Rule 9(b), affidavits do not support the pleading with particularity requirement.  *See* Fed. R. Civ. P. 9(b); Fed. R. Civ. P. 7; *see also Miller v. Gain Fin.,*

*Inc.,* 995 F.2d 706, 709 (7th Cir. 1993).  For this, and the foregoing reasons, any claims in relation to fraudulent inducement must be dismissed.

### e. Plaintiffs' Complaint Must be Dismissed Because a *Monell* Claim Cannot Stand Alone

A *Monell* claim must be supported by an allegation of a constitutional violation by a government employee.  It is "axiomatic that a *Monell* claim cannot lie where there is no underlying constitutional violation by the employee." *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 459 (D. Md. 2020) (citations and quotations omitted).  "No actionable claim against supervisors or local governments can exist without a constitutional violation committed by an employee." *Anderson v. Caldwell Cty. Sheriff's Office*, 524 F. App'x 854, 862 (4th Cir. 2013).  "Municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer,' at least in suits for damages." *Waybright v. Frederick Cnty., MD*, 528 F.3d 199, 203–04 (4th Cir. 2008) *citing City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571; *see also Grayson v. Peed,* 195 F.3d 692, 696 (4th Cir.1999).

Here, no constitutional claim has been alleged against any City employees.  The only Defendant named in Plaintiffs' Complaint is the Mayor and City Council of Baltimore.  No individual employee of the City is named as a defendant, and there are no allegations of an underlying constitutional violation committed by any City employee.  As such, Count I of Plaintiffs' Complaint fails to state a claim and must be dismissed.

## II.    Plaintiffs' State Law Claims Should be Dismissed as a Matter of Law

### a.  Plaintiffs' State Law Claims are Covered by the Maryland Workers' Compensation Act

The WCA provides compensation to employees injured in workplace accidents or, in the case of death, to the dependents of the covered employee.  Md. Code Ann., Lab. & Empl. § 9-501.

Recipients need not prove fault to collect under the WCA: the act provides a "no-fault compensation system for employees and their families for work-related injuries." *Polomski v. Mayor & City Council of Baltimore*, 344 Md. 70, 76 (1996). The WCA not only serves to compensate workers and their dependents, but also "protect[s] employers from the unpredictable nature and expense of litigation, and the public from the overwhelming tax burden of caring for the helpless human wreckage found [along] the trail of modern industry." *Id.* (quotation omitted).

In exchange for this "certain, efficient, and dignified form of compensation," an employee "abandon[s] common law remedies, thereby relieving employers from the vagaries of tort liability." *Id.*; *see also* Md. Code Ann., Lab. & Empl. § 9-509(b) ("the compensation provided under this title to a covered employee or the dependents of a covered employee is in place of any right of action against any person"). The "[c]ompensation awarded on this fault-free basis under the statutory plan substitutes for an employee's common law right to bring a fault-based tort against an employer for damages resulting from the employee's injury." *Mayor & City Council of Baltimore City v. Johnson*, 156 Md. App. 569, 587 (2004), *aff'd,* 387 Md. 1, 874 A.2d 439 (2005); *see also Bd. of Educ. of Prince George's Cty. v. Marks-Sloan*, 428 Md. 1, 36–37 (2012). As such, "compensation pursuant to the Act is ordinarily an injured employee's exclusive remedy with respect to the employer." *Johnson*, 156 Md. App. at 587.

The only limited exception to this rule of exclusivity is when an employee is "injured or killed as a result of the deliberate intent of the employer to injure or kill the covered employee." Md. Code Ann., Lab. & Empl. § 9-509(b). Maryland jurisprudence makes clear that to "bypass the exclusivity provided by a workmen's compensation statute . . . the complaint must be based upon allegations of an intentional or deliberate act by the employer *with a desire to bring about the consequences of the act.*" *Johnson v. Mountaire Farms of Delmarva, Inc.*, 305 Md. 246, 255

(1986) (emphasis added).  A complaint that alleges intentional acts leading to an accidental injury or death is insufficient, because "[w]hile an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it."  *Id.*  This exception therefore applies only in the unusual circumstance where an employer deliberately and intentionally harms their employee.

Important here, allegations of an employer's willful or knowing behavior, gross negligence, or violation of a safety statute do not fall under the "deliberate intent" exception.  As described by the Court of Appeals of Maryland:

> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, *wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental*                                               *character.*

*Id.*  at 254 (emphasis in original) (quoting Larson, *The Law of Workmen's Compensation* § 65.11 (1983)). This principal was reiterated more recently by the Fourth Circuit in *Gantt v. Sec., USA*, where the court noted that "[p]roof of an employer's willful, wanton, or reckless conduct even when that conduct is undertaken with a knowledge and appreciation of a high risk to another does not suffice to bring employer's conduct within intentional tort exception to Maryland Workers' Compensation Act's normal exclusivity rule." 356 F.3d 547, 555 (4th Cir. 2004) (citations and quotations omitted).

It is undisputed that the accident in this case took place in the course of Plaintiffs' employment with the City and therefore falls under the WCA.  It is also clear that the accident does not fall under the WCA's "deliberate intent" exception.  Even if taken as true, the claims in Plaintiffs' Complaint describe only negligent actions by the City.  Plaintiffs' claims are based on

allegations that the City "intentionally disregarded" the risk posed to firefighters working for the City with regards to the potential danger of vacant buildings. Compl. at ¶ 31. The Complaint further relies on the allegation that "the City created the danger" through its neglect of the Property and failure to warn of any potential danger, "and then intentionally exposed the Plaintiffs to that danger." Compl. at ¶ 32. Plaintiffs also allege that they were "promoted" to enter the building "regardless of the risks associated" with the structure. Compl. at ¶ 42. These claims, like those in *Cunningham,* all rely on an OSHA report regarding the potential dangers of vacant buildings. Compl. at ¶ 28. They also claim the City's actions with respect to the Program were linked to the Plaintiffs' entry into the Property and their subsequent injuries, as they claim the City improperly discontinued the program and failed to inform them of this alleged fact.

None of these allegations are sufficient to bypass the exclusivity provision in the WCA. Nowhere does Plaintiffs' Complaint allege that the City Defendants deliberately intended to cause the deaths of Plaintiffs Butrim, Sadler, and Lacayo or that the City deliberately intended to cause injury to Plaintiff McMaster. While the Complaint generally mentions that the deaths and injuries were due to the "intentional decisions" of the City Defendants, it does not claim that the City Defendants intended the alleged consequence of those decisions, as is required under Maryland law. Complaint, *passim*; *see also Johnson*, 305 Md. at 255. Indeed, Plaintiffs cannot make this claim, as the Complaint asserts negligence, wrongful death, and survival actions, supported by the allegations that the deaths and injuries were caused by what amounts to a failure to warn Plaintiffs that the Property presented a hazard. The Complaint does not assert recklessness or gross negligence, although even those claims would also be insufficient to bypass WCA exclusivity. No intentional torts are claimed. The Complaint clearly details an accident that occurred during the Plaintiffs' employment with the City. Nowhere does it suggest that the City Defendants undertook

24

the criminal act of intentionally causing the deaths of Plaintiffs Butrim, Lacayo, and Sadler or the injuries of Plaintiff McMaster.  Therefore, Counts II, III, and IV must be dismissed with prejudice and without leave to amend.

## CONCLUSION

For the reasons stated herein, the City respectfully requests that this Honorable Court dismiss Plaintiffs' Complaint against the City in its entirety, with prejudice and without leave to amend.

Dated: March 18, 2025                    Respectfully submitted,

EBONY M. THOMPSON
City Solicitor

/s/ *Hanna Marie C. Sheehan*
HANNA MARIE C. SHEEHAN (#19531)
Chief Solicitor
Baltimore City Law Department
100 Holliday Street, Suite 101
Baltimore, Maryland 21202
Phone: 410-396-4431
Fax:    410-547-1025
Hanna.Sheehan@baltimorecity.gov
*Counsel for Defendant Mayor and City*
*Council of Baltimore*