**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| **RACHEL BUTRIM et al.** | * | |
| | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **V.** | * | |
| | * | **CIVIL NO. 1:25-cv-00796-MJM** |
| **MAYOR AND CITY COUNCIL OF BALTIMORE** | * | |
| | * | |
| | * | |
| **Defendant** | * | |

**********************************************************************************************

**MAYOR AND CITY COUNCIL OF BALTIMORE'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant Mayor and City Council of Baltimore submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Amended Complaint. For the reasons set forth below, the City asks that Plaintiffs' Amended Complaint be dismissed with prejudice for failure to state a claim.

Dated: August 24, 2026

Respectfully submitted,

EBONY M. THOMPSON
City Solicitor

/s/ *Hanna Marie C. Sheehan*
HANNA MARIE C. SHEEHAN (#19531)
Chief Solicitor
Baltimore City Law Department
100 Holliday Street, Suite 101
Baltimore, Maryland 21202
Phone: 410-396-4431
Fax: 410-547-1025
Hanna.Sheehan@baltimorecity.gov
*Counsel for Defendant Mayor and City Council of Baltimore*

**Table of Contents**


**INTRODUCTION** ........ 3

**STANDARD OF REVIEW** ........ 4

**I. Plaintiffs' Constitutional Claims Fail as a Matter of Law** ........ 5

**a. The Fourth Circuit Requires a Plausible Allegation of an Intent to Harm to Uphold a 14th Amendment State-Created Danger Claim** ........ 5

**b. Allegations of Fraudulent Inducement Do Not Displace the Fourth Circuit's Intent to Harm Standard.** ........ 11

**c. Plaintiffs' Amended Complaint does not Plausibly Allege that the City Intended to Harm the City Firefighters.** ........ 16

**d. Claims of Fraudulent Inducement Must be Pled with Particularity.** ........ 19

**1. Plaintiffs Have Failed to Plead Sufficient Particular Facts to Support Their Claim of Fraudulent Inducement.** ........ 20

**e. Plaintiffs' Amended Complaint Must be Dismissed Because a *Monell* Claim Cannot Stand Alone** ........ 28

**II. Plaintiffs' State Law Claims Should be Dismissed as a Matter of Law** ........ 29

**a. Plaintiffs' State Law Claims are Covered by the Maryland Workers' Compensation Act** ........ 29

**CONCLUSION** ........ 32

## INTRODUCTION

This matter involves a work-place accident that occurred at 205 South Stricker St. in Baltimore City (the "Property"). On January 24, 2022, three firefighters died at the Property while responding to a fire. Plaintiffs in this matter all sue as representatives of these deceased individuals, with the exception of one injured firefighter, who sues on his own behalf. Plaintiffs bring a Fourteenth Amendment "state-created danger" (Count I) claim as well as negligence (Count II), survival action (Count III), and wrongful death claims (Count IV). None of these Counts state a claim upon which relief can be granted and therefore Plaintiffs' Complaint should be dismissed.

Plaintiffs' Amended Complaint attempts to convert this tragic work-place accident into a constitutional case by asserting a claim against the City under the Fourteenth Amendment's "state-created danger" doctrine. This doctrine is so limited that the U.S. Court of Appeals for the Fourth Circuit (the "Fourth Circuit") recently noted that it has not upheld a state-created danger claim in over 20 years. *Turner v. Thomas*, 930 F.3d 640, 646 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 905, 205 L. Ed. 2d 461 (2020). Such claims are so consistently rejected because they must be supported by allegations that the government *intentionally* and *deliberately* injured its employee. *Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317, 322 (4th Cir. 2012). Indeed, these claims have been rejected multiple times in this Circuit in circumstances where a firefighter tragically dies in the course of their duty. *Id*; *see also Waybright v. Frederick Cty., MD,* 528 F.3d 199 (4th Cir. 2008). Like in those cases, Plaintiffs' Amended Complaint here alleges only a series of acts or omissions that led to a workplace accident. The Amended Complaint does not – and cannot – plausibly allege that the City *intended* the deaths of its valued employees, nor that the City fraudulently induced those who were injured into the circumstances that led to their injuries.

Plaintiffs also bring state law claims in the form of negligence, survival action, and

wrongful death claims. It is undisputed that Plaintiffs were working when the incident at the Property occurred. As such, Plaintiffs' state law claims are improper as their right to relief lies with the Maryland Workers' Compensation Act ("WCA"), which "provides the exclusive remedy to an employee for an injury or death arising out of and in the course of employment." *McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94, 99 (D. Md. 2011). Plaintiffs have also failed to bypass the exclusivity of the WCA as they have failed to allege that the City's behavior was intentional or deliberate.

For these reasons and those discussed *infra*, the City respectfully requests that Plaintiffs' Amended Complaint be dismissed with prejudice and without leave to amend.

## STANDARD OF REVIEW

A complaint is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not "state a claim upon which relief can be granted." This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, the court is not obligated to accept a plaintiff's conclusory allegations regarding the legal effect of the facts alleged. *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1979). Rather, a plaintiff has an obligation to provide grounds for his entitlement to relief and that obligation requires more than labels, conclusions, or a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." *Qwest Communications Corp. v. Maryland-National Capital Park & Planning Comm'n*, 553 F. Supp. 2d 572, 574 (D. Md. 2008) (*quoting Twombly*, 550 U.S. at 555). "Nor does a Complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft*, 129 S. Ct. at 1949 (internal quotation marks and citation omitted).

Thus, in order "[t]o survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (*emphasis added*) (*quoting Twombly*, 550 U.S. at 570). The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id*. Rather, it requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief, *i.e*., the "plausibility of 'entitlement to relief.'" *Id.* (*quoting Twombly*, 550 U.S. at 557) (emphasis added).

## ARGUMENT

### I. Plaintiffs' Constitutional Claims Fail as a Matter of Law

#### a. The Fourth Circuit Requires a Plausible Allegation of an Intent to Harm to Uphold a 14th Amendment State-Created Danger Claim

Count I of Plaintiffs' Amended Complaint seeks recovery based on the 14th Amendment's state-created danger doctrine. A cursory review of Supreme Court and Fourth Circuit precedent reveals that those claims fail as a matter of law. The state-created danger doctrine is a limited exception to the general rule that "a defendant's mere failure to act does not give rise to liability for a due process violation." *Turner*, 930 F.3d at 644. In the government employment context, the state-created danger doctrine requires "affirmative acts, not merely . . . inaction or omissions." *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015). The Fourth Circuit has repeatedly recognized that "the state-created danger doctrine is narrowly drawn, and the bar for what constitutes an 'affirmative act' is high." *Turner,* 930 F.3d at 645. This is particularly true in attempts to convert tort claims alleging negligence or recklessness into constitutional cases. In these cases, federal courts are acutely aware of the danger in allowing the due process clause to "supplant[] state tort law in almost any suit alleging that a local official has caused harm." *Waybright v. Frederick Cty., MD,* 528 F.3d 199, 204 (4th Cir. 2008). As a result, "in case after case, the Supreme Court has

rejected this prospect and spurned any approach to the Fourteenth Amendment that would make it 'a font of tort law to be superimposed upon'" state tort law principles. *Id.*, quoting *Paul v. Davis,* 424 U.S. 693, 701 (1976).

The Fourth Circuit clarified the narrow boundaries of the state-created danger doctrine in *Pinder v. Johnson,* where the court held that the doctrine does not apply where "the state did not 'create' the danger, it simply failed to provide adequate protection from it." 54 F.3d 1169, 1175 (4th Cir. 1995). The *Pinder* court recognized that the government does not "commit[] an affirmative act or create[] a danger every time it does anything that makes injury . . . more likely." *Id.* Following the narrow confines on the doctrine drawn by the *Pinder* court in 1995, the Fourth Circuit has "never issued a published opinion recognizing a successful state-created danger claim." *Turner*, 930 F.3d at 646. Instead, the court has consistently rejected such claims and repeatedly emphasized the "exactingly high bar for what constitutes affirmative conduct sufficient to invoke the state-created danger doctrine." *Id.*

State-created danger claims so consistently fail at the pleading stage because the Fourth Circuit requires a showing that the government *intentionally* and *deliberately* harmed its employee. *See, e.g.*, *Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317, 322 (4th Cir. 2012) (Plaintiff "could not, without alleging an intent to harm, maintain an action for a substantive due process violation."); *Waybright v. Frederick Cnty., MD*, 528 F.3d 199, 205 (4th Cir. 2008)("For a due process challenge to executive action to succeed, the general rule is that the action must have been *intended to injure* in some way unjustifiable by any government interest.") (emphasis added). This principle is drawn from the Supreme Court's decision in *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992), a case that closely mirrors the claims asserted in the instant matter.

In *Collins*, Larry Collins, an employee in the city of Harker Heights' sanitation department,

died of asphyxia after entering a manhole to unstop a sewer line. *Id.* at 119. Mr. Collins' widow brought an action under 42 U.S.C. 1983, alleging that Mr. Collins "had a right under the Due Process Clause of the Fourteenth Amendment to be free from unreasonable risks of harm . . . and . . . to be protected from the [city's] custom and policy of deliberate indifference toward [its employees'] safety." *Id.* at 126 n. 9. The suit further alleged that the City had "violated that right by following a custom and policy of not training its employees about the danger of working in sewers and not providing safety equipment and warnings." *Id.* Finally, the complaint alleged that the city had "systematically and intentionally failed to provide the equipment and training required by a Texas statute." *Id.* at 118.

In analyzing the claim, the Supreme Court first noted that the complaint "does not charge the city with willful violations of Collins' rights," and "does not claim that the city or any of its agents deliberately harmed her husband." *Id.* at 125. Instead, the complaint was premised on "the more general allegation that the city deprived him of life and liberty by failing to provide a reasonably safe work environment." *Id.* at 125-26. The Court found that this allegation did not state a claim under the Fourteenth Amendment, holding that "[n]either the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." *Id.* at 126.

The Court further noted that the plaintiff's claim that the federal constitution mandated a minimum level of workplace safety was "unprecedented," and substantively distinct from the Fourteenth Amendment protections prior recognized by the Court, such as protections for pre-trial detainees, persons in mental institutions, or persons under arrest. *Id.* at 127. The Due Process guaranteed by the Constitution "includes a continuing obligation to satisfy certain minimal

custodial standards," the Court held, but does not provide protection for an employee who voluntarily reports to work. *Id.* at 128.

Moreover, the *Collins* Court was "not persuaded that the city's alleged failure to train its employees, or warn them about known risks of harm, was an omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* The Court noted that the claim was "analogous to a fairly typical state-law tort claim," and that "the Due Process Clause does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Id.* The Court's decision rested on the principle that "[d]ecisions concerning the allocation of resources to individual programs, such as sewer maintenance, and to particular aspects of those programs, such as . . . training . . . involve a host of policy choices that must be made by local representatives, rather than by federal judges." *Id.* at 128-29.

Applying *Collins*, the Fourth Circuit has rejected attempts to cloak workplace safety tort claims as constitutional violations. In *Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317 (4th Cir. 2012), the survivors and estate of Racheal Wilson, a Baltimore City Fire Department recruit, brought suit against the City after Ms. Wilson tragically died during a "live burn" training exercise in a vacant building in Baltimore City. As here, plaintiffs alleged that the City "violated Wilson's substantive due process rights by staging the exercise with *deliberate indifference* to Wilson's safety, so as to shock the conscience." *Id.* at 319 (emphasis in original). More specifically, the *Slaughter* plaintiffs alleged that City officials knew that the building used was unsuitable for the exercise; intentionally made the premises more susceptible to dangerous fires; did not properly equip recruits; provided inadequate water supply; and violated National Fire Protection Association standards. *Id.* at 320. Taken together, plaintiffs alleged that "these and other conditions

and circumstances amounted to willful violation of nationally-recognized safety standards." *Id.* (quotations omitted).

The Fourth Circuit, applying *Collins*, upheld dismissal of the action. As the Supreme Court did in *Collins*, the court differentiated the case from one in which the government has a custodial relationship with the plaintiff, such as a pretrial detainee or person under arrest, noting that in those circumstances, a "deliberate indifference to the care of persons in . . . custody can shock the conscience for purposes of finding a substantive due process violation." *Id.* at 321. The court made clear, however, that "this standard does not apply to persons in an employment relationship with the government." *Id.* The court acknowledged that the plaintiffs had alleged that the Fire Department had "failed to provide Wilson with safe working conditions, proper equipment, proper training, and particularized notice about risks of which Fire Department officials had actual knowledge." *Id.* at 322. The court found these allegations were insufficient to state a claim, however, holding:

> [I]n the voluntary employment context the plaintiffs have not alleged arbitrary (in the constitutional sense) or conscience-shocking conduct because they did not assert that the Fire Department *intended to harm* Wilson, as would be necessary to establish a substantive due process violation.

*Id.* at 322 (emphasis in original). While it was true that "the Baltimore City Fire Department created the danger" the Court held that "this fact does not satisfy any element of the standard the Supreme Court has articulated for showing a substantive due process violation with respect to a government employee." *Id.* As such, the Fourth Circuit upheld the trial court's application of "a standard requiring the showing of intent to harm" and the trial court's conclusion "that 'however reckless' the Fire Department may have been, its actions did not 'rise to the level of a constitutional violation.'" *Id.* at 319.

This principle was most recently applied by this Court in *Est. of Cunningham v. Mayor &*

*City Council of Baltimore*, 665 F. Supp. 3d 725 (D. Md. 2023). There, Trina Cunningham, a City employee, tragically fell to her death at the Patapsco Wastewater Treatment Plant. Ms. Cunningham's estate sued the City alleging a Fourteenth Amendment state-created danger claim. The allegations mirrored those asserted here, with plaintiff alleging that the City "refused to inspect and maintain walking-working surfaces" at the facility, "refused to correct or repair damages [sic] walking surfaces," and refused to abate "numerous known and foreseeable dangers or to take any precautions to prevent death or serious bodily injury." *Id.* at 730. Plaintiffs framed their allegations as deliberate and intentional acts by the City, asserting that the City "deliberately chose not to repair or maintain the . . . facility or train their employees," and that "Ms. Cunningham's death was due to the compounded intentional decisions" of the City. *Id.* at 730, 737.

This Court dismissed the case. Applying *Slaughter*, the Court found that "Plaintiffs must show here that the City defendant intended to harm Ms. Cunningham to establish a substantive due process violation in this case." *Id.* at 736. The Court noted that the Complaint described "negligent, or even egregious, conduct by the City Defendants," but nonetheless "agree[d] with the City Defendants that the allegations in the amended complaint do not show the City Defendants intended to harm Ms. Cunningham." *Id.* at 737. In so finding, the court emphasized that intentional harm, not deliberate indifference, was the correct standard for claims based on an unsafe work environment. *Id.* ("The Court is also not persuaded by Plaintiffs' argument that the deliberate indifference standard should apply to their state-created danger claim.").

Important here, the Court found that plaintiffs' references to deliberate or intentional acts by the City were insufficient to state a claim. Although plaintiffs alleged intentional acts that led to an accident, this did not amount to a showing "that the City *intended* for Ms. Cunningham to fall through the grating at the . . . facility." *Id.* (emphasis in original). In so finding, the court noted

that "Plaintiffs' argument that the City Defendants' intent to harm can be measured by the natural and probable consequences of their actions is equally unavailing." *Id.* at 737 n. 3. This ruling is consistent with *Slaughter*, which made clear that the standard requires an action taken *"with the purpose of causing harm to*" Plaintiff. *Slaughter*, 682 F.3d at 319 (emphasis in original).

The Fourth Circuit has therefore clearly articulated that in the government employment context, a plaintiff must allege a *deliberate intent* to harm an employee to establish a state-created danger due process claim. This standard has been consistently and strictly enforced by trial courts in the Fourth Circuit. *See, e.g., Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 735 (D. Md. 2013) ("[T]he employee plaintiff must show that the governmental employer defendant '*intended to harm*' its employee in order to 'establish a substantive due process violation'"); *Evans v. Maryland Nat'l Cap. Parks & Plan. Comm'n*, No. CV TDC-19-2651, 2020 WL 6703718, at *13 (D. Md. Nov. 13, 2020) ("In the voluntary employment context, a plaintiff must allege intentional harm, not mere deliberate indifference."); *Smith v. City of Greensboro*, No. 1:19CV386, 2020 WL 1452114, at *15 (M.D.N.C. Mar. 25, 2020) ("Outside of the custodial context, government conduct normally does not shock the conscience (at least not in the constitutional sense) unless it was 'intended to injure . . .'"). As described *infra*, Plaintiffs' Amended Complaint fails to meet this standard.

**b. Allegations of Fraudulent Inducement Do Not Displace the Fourth Circuit's Intent to Harm Standard.**

The Fourth Circuit has not adopted fraudulent inducement as a vehicle by which to swerve around the well-established intent to harm standard. No Fourth Circuit opinion has recognized fraud allegations as an exception to the clear rule that a Plaintiff must allege an intent to harm to state a Fourteenth Amendment state-created danger claim. In contrast, the Fourth Circuit has rejected state-created danger claims that relied on material misrepresentations. Even reaching out

of circuit, the only caselaw recognizing misrepresentations as relevant to this analysis applied a different legal standard, deliberate indifference, to materially different fact patterns.

No case in this circuit has applied the rule Plaintiffs urge this Court to adopt: that allegations of fraud remove this case from the "voluntary" employment context and therefore exempt Plaintiffs' claims from the intent to harm rule. Indeed, the City can find no case anywhere that explicitly adopts this rule. While a handful of out of circuit opinions treat material misrepresentations as relevant to a state-created danger claim, each of those cases applies the deliberate indifference standard. *See L.W. v. Grubbs,* 974 F.2d 119, 121–23 (9th Cir. 1992) (allowing state-created danger claim where officials affirmatively exposed employee to a known danger and misrepresented the risks of her work, applying deliberate indifference standard); *Pauluk v. Savage*, 836 F.3d 1117, 1124–26 (9th Cir. 2016) (holding involuntary transfer to a mold-contaminated workplace could constitute state-created danger where officials acted with deliberate indifference and allegedly concealed the danger); *Briscoe v. Potter*, 355 F. Supp. 2d 30, 44–47 (D.D.C. 2004) (holding affirmative false safety representations and coercion sufficient to allege conscience-shocking deliberate indifference). But as this Court recognized, in the employment context deliberate indifference is not the standard in this Circuit, so these cases do not support Plaintiffs' claims. *Butrim v. Mayor & City Council of Baltimore ("Butrim II")*, 821 F. Supp. 3d 509, 525 (D. Md. 2026) (citing *Slaughter*, 682 F.3d at 321–22).[1]

Even if deliberate indifference were the standard in this Circuit, the facts of this case do not rise to meet that standard. At least three Circuits have explicitly adopted the rule that in the

[1] While *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 178 (4th Cir. 2023) applied the deliberate indifference standard, as this Court recognized, "critically . . . the tenant's relationship with the housing authority was not the 'voluntary employment relationship' controlled by the Fourth Circuit's holding in *Slaughter*, 682 F.3d at 322." *Butrim v. Mayor & City Council of Baltimore*, 821 F. Supp. 3d 509, 529 (D. Md. 2026).

government employment context, "a government employee may bring a substantive due process claim against his employer if the state compelled the employee to be exposed to a risk of harm *not inherent in the workplace*." *Polanco v. Diaz*, 76 F.4th 918, 927 n. 6 (9th Cir. 2023) (emphasis added) (quoting *Kedra v. Schroeter*, 876 F.3d 424, 436 n.6 (3d Cir. 2017)); *Washington v. D.C.*, 802 F.2d 1478, 1482 (D.C. Cir. 1986) ("The state did not force appellant to become a guard, and the state has no constitutional obligation to protect him from the hazards inherent in that occupation."). *Pauluk* concerned an office worker unexpectedly exposed to a hazardous environment, and *Grubbs* involved a risk that could not be reasonably anticipated for a worker in a medium security prison. In *Briscoe*, upon which Plaintiffs have previously relied, "plaintiffs alleged that they were 'threaten[ed], intimidat[ed], and/or coerc[ed]' to continue working under unsafe conditions, and their complaint outlined the defendants' threats and intimidation in detail." *Butrim II*, 821 F. Supp. 3d at 528.

There are still no such allegations of intimidation or coercion in Plaintiffs' Amended Complaint, and "[i]n contrast, the danger at issue here—the collapse of a vacant building during a fire—was a hazard at least arguably inherent to Plaintiff Firefighters' occupation and could be reasonably anticipated when they accepted and maintained employment with BFD." *Id.* After *Briscoe* the D.C. Circuit applied this standard to a state-created danger claim brought by firefighters who alleged "avoidable state-created *additional* risks of injury unknown to the Firefighters when they joined the Department." *Est. of Phillips v. D.C.*, 455 F.3d 397, 407 (D.C. Cir. 2006). The court made clear that "the District is not constitutionally obliged by the Due Process Clause to protect public employees from inherent job-related risks." *Id.*[2] The City has

[2] The facts in *Phillips* were stronger than for Plaintiffs here, as the D.C. firefighters were practically and effectively restricted in their ability to resign, requiring permission or one month's notice. The court still found that their employment was voluntary. *Phillips*, 455 F.3d at 405-06.

found no federal appellate decision sustaining a state-created-danger claim by a firefighter or fire recruit based on the occupational hazards of firefighting or firefighter training.

To the extent that the Fourth Circuit has considered instances where a plaintiff has relied on a material government assurance, it has explicitly rejected the argument that a misrepresentation is sufficient to create the "special relationship" which would bypass the intent-to-harm rule. In *Pinder v. Johnson,* 54 F.3d 1169, 1172 (4th Cir. 1995), the court faced a set of facts that, like this case, were "genuinely tragic." *Id.* There, Carol Pinder called the police after being attacked in her home by former boyfriend, Don Pittman. *Id.* Pittman was arrested and taken into custody. *Id*. Ms. Pinder explained to the police that Pittman had been violent in the past and had attempted to set her home on fire. *Id.* She asked whether it would be safe for her and her children to return home. *Id*. A police officer "assured her that Pittman would be locked up overnight." *Id.* Ms. Pinder relied on this assurance and sent her children home. *Id*. Despite this assurance, Pittman was released that night, returned to Ms. Pinder's home, and set it on fire, killing her three children. *Id*.

Plaintiff argued that these "express promises to her created a 'special relationship,' which in turn gave rise to an affirmative duty to protect her under the Due Process Clause of the Fourteenth Amendment." *Id*. The Fourth Circuit squarely rejected this argument. Applying *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189 (1989), the court held that a material misrepresentation does not create the custodial or special relationship that imposes an affirmative constitutional obligation and permits deliberate indifference to satisfy substantive due process:

> Pinder argues, however, that Johnson's explicit promises that Pittman would be incarcerated overnight created the requisite "special relationship." We do not agree. By requiring a custodial context as the condition for an affirmative duty, *DeShaney* rejected the idea that such a duty can arise solely from an official's awareness of a specific risk or from promises of aid. *DeShaney,* 489 U.S. at 200, 109 S.Ct. at 1005–06. There, as here, plaintiff alleged that the state knew of the special risk of harm at the hands of a third party.

> *Id.* at 197, 109 S.Ct. at 1004. There, as here, plaintiff alleged that the state had "specifically proclaimed, by word and by deed, its intention to protect" the victim. *Id.* Neither allegation was sufficient to support the existence of an affirmative duty in *DeShaney,* and the same holds true in this case.

*Id*. at 1175. Ultimately, the court concluded that "[p]romises do not create a special relationship—custody does." *Id.*; *see also Doe v. Rosa*, 795 F.3d 429, 433 (4th Cir. 2015) (finding no state-created danger where summer camp "deliberately conspired to conceal" allegations of sexual assault against a camper).

Plaintiffs' claims here, even if taken as true, allege only a government assurance which was relied on by Plaintiffs to their detriment. Plaintiffs' claim that the City made affirmative misrepresentations that led Plaintiffs to believe that they were not in any danger. Plaintiffs, like Pinder, argue that these promises created a special relationship that functions to shift the standard from intent to harm to deliberate indifference. *Slaughter*, 682 F.3d at 321; *Est. of Phillips v. D.C.*, 455 F.3d 397, 402 (D.C. Cir. 2006) ("[T]he lower threshold . . . by showing deliberately indifferent as opposed to intentional conduct applies only in circumstances where the State has a heightened obligation toward the individual.").

In the government employment context, "voluntary" means noncustodial, not fully informed. A special relationship sufficient to justify the application of deliberate indifference and not intent to harm only applies if the government employee was in a custodial relationship with their employer. *Waybright*, 528 F.3d at 207 (applying intent to harm because plaintiff was not in custody and was "free to walk away from the exercise session and the job."); *Pinder*, 54 F.3d at 1175 (emphasizing importance of the lack of "limitation imposed on . . . liberty."); *Smith*, No. 1:19CV386, 2020 WL 1452114, at *15 (M.D.N.C. Mar. 25, 2020) ("Outside of the custodial context, government conduct normally does not shock the conscience (at least not in the constitutional sense) unless it was 'intended to injure . . .'"). As such, this case remains a voluntary

employment case, and intent to harm remains the strict standard that Plaintiffs fail to meet.

**c. Plaintiffs' Amended Complaint does not Plausibly Allege that the City Intended to Harm the City Firefighters.**

Plaintiffs' Amended Complaint is long and sprawling, replete with unsubstantiated claims regarding City policies dating back to the early 20th Century. The second half of it also closely mirrors the Complaint originally filed in Case No. 1:24-CV-01284. Now, however, Plaintiffs have reorganized some parts of that Complaint, added others, and removed most of the language referring to their allegations as being made "upon information and belief." They did not remove some of the more outlandish allegations, such as the entirely unsupported claim that the City included the Property in a "pay to play and profit-sharing scheme." Am. Compl. at ¶ 16. These vague allegations of nefarious activity are supported only by a general statement that the City has a "long and inescapable history of public corruption." *Id*. at ¶ 64. Other allegations purportedly showing City "corruption" include a description of the City's public efforts to work with non-profit partners to develop vacant homes, accompanied by the unsupported and conspiratorial allegation that fees collected under related grant agreements were "likely kept for personal gain." *Id.* at ¶ 68. Finally, throughout the Amended Complaint, Plaintiffs alleged no less than five times that the City outright "lied" to the Plaintiffs. *Id*. at ¶ ¶ 9, 22–23, 26. These assertions, even if supported, would be insufficient to state a claim for state-created danger, but it is worth noting that these are exactly the type of "naked assertions devoid of further factual enhancement" that cannot support a claim under any circumstance. *Ashcroft*, 129 S. Ct. at 1949. Finally, the only substantive change between Plaintiffs' initial Complaint in this specific action and the Amended Complaint is the addition of affidavits that Plaintiffs' previously included with their Opposition to the City's prior Motion to Dismiss the original Complaint.

Aside from these vague and unsupported claims, the Amended Complaint is based on the

same allegations as in *Slaughter* and *Cunningham*: that the City knew or should have known that the condition of the Property was dangerous but disregarded that danger. Am. Compl. at ¶ 32. More specifically, the Amended Complaint alleges that the City "knew and failed to tell" firefighters that the property was vacant and potentially structurally unsound. *Id.* at ¶ 15. Like in *Cunningham*, Plaintiffs rely on an OSHA report regarding the potential dangers of vacant buildings, and allege that the City "intentionally disregarded" the risk posed to firefighters employed by the City. *Id.* at ¶ 32. Ultimately, the Amended Complaint is premised on the allegation that "the City created the danger" through its neglect of the building and failure to warn, "and then intentionally exposed the Plaintiffs to that danger." *Id.* at ¶ 31.

As described *supra*, the Supreme Court and Fourth Circuit have consistently rejected state-created danger claims based on similar allegations. In *Slaughter*, plaintiff alleged that the Fire Department had created a known danger in a vacant building by tearing down walls, scattering debris, and adding flammable excelsior to the walls. *Slaughter*, 682 F.3d at 320. These actions, plaintiff alleged, made the vacant building "unsuitable" for a training exercise that led to the death of a recruit. *Id.* In *Cunningham*, plaintiffs alleged that the City disregarded a series of known dangers at a wastewater treatment facility, failed to disclose or repair those known dangers, and thereby caused the death of an employee. More specifically, the *Cunningham* Plaintiffs alleged that MOSH had found 24 "serious violations" related to the maintenance and inspection of the facility, and that these violations led directly to the death of a City employee. *Cunningham*, 665 F. Supp 3d. at 729-30. Finally, in *Harker Heights*, the plaintiff alleged that the City systematically failed to train its employees, provide them with proper safety equipment, or warn them regarding known dangers of working in the sewer system. *Harker Heights,* 503 U.S. at 117-18. In each of the cases, like here, plaintiffs argued that a systematic failure to train, maintain, and warn was so

"conscience shocking" that it rose to the level of a constitutional violation. In each case, this argument was rejected and the case dismissed.

Indeed, the allegations in *Slaughter and Waybright* were a degree worse than those made in this case, as the City directly controlled the environments in which the deaths occurred – in *Slaughter* a vacant property used to train recruits, and in *Waybright* a closely supervised firefighter training facility. In *Slaughter*, the complaint alleged that the City had actively created the danger by adding flammable materials to the walls of a vacant building and tearing down wallboard. *Slaughter*, 682 F.3d at 320. In *Waybright*, the complaint alleged that a fire recruit was forced to run in high temperatures during a training exercise, a command that allegedly led to his death. *Waybright* 528 F.3d at 202-03. Yet in both cases, despite this alleged intentional conduct, the Fourth Circuit held that a state-created danger claim could not stand because there was no plausible allegation that the City intended to harm its employees. *Slaughter*, 682 F.3d at 319; *Waybright,* 528 F.3d at 205-06.

Like in *Slaughter*, *Cunningham* and *Harker Heights*, Plaintiffs' Amended Complaint does not allege that the City of Baltimore intended the City Firefighters' injury or death. The Amended Complaint only alleges a series of oversights and failures to warn, which Plaintiffs maintain lead to a tragic accident. The Amended Complaint's allegation that the City "intentionally exposed the Plaintiffs to…danger" is insufficient, because it does not plausibly allege that the City intended the injury or death of *any* firefighter. Such a serious allegation must be supported by more than the speculative evidence of alleged omissions presented by Plaintiffs' Amended Complaint. Moreover, Plaintiffs' vague allegations of corruption are both factually unsupported and irrelevant to the state-created danger test. Ultimately, Plaintiffs' Amended Complaint attempts to achieve exactly what the Fourth Circuit has cautioned against: transforming a state common law tort claim

into a constitutional action. *Waybright*, 528 F.3d at 204. While Plaintiffs may consider the claimed conduct to be egregious, because no intentional harm is alleged, the Amended Complaint fails to state a Fourteenth Amendment claim against the City. *Slaughter*, 682 F.3d at 322.

**d. Claims of Fraudulent Inducement Must be Pled with Particularity.**

Even if fraudulent inducement were sufficient to displace the intent to harm standard, which it is not, Plaintiffs' Amended Complaint still fails to provide facts sufficient to fulfill the pleading requirements of FRCP Rule 9(b).

In order to state a claim for fraudulent inducement, a plaintiff must show:

> (1) a material representation of a party was false, (2) falsity was known to that party or the misrepresentation was made with such reckless indifference to the truth as to impute knowledge to him, (3) the misrepresentation was made with the purpose to defraud (scienter), (4) the person justifiably relied on the misrepresentation, and (5) the person suffered damage directly resulting from the misrepresentation.

*Airport Square Holdings, LLC v. GCCFC 2007-GG9 Colomary Facilities, LLC,* Civ. No. JFM-16-02883, 2017 WL 639230, at *6 (D. Md. Feb. 16, 2017) (citing *Lawley v. Northam,* Civ. No. ELH-10-1074, 2011 WL 6013279, at *9 (D. Md. Dec. 1, 2011)). All five of these elements *must* be demonstrated in order to state a claim for fraudulent inducement. "Fraud is a scienter tort consisting of the representation of a material fact that is false, deceptive and injurious." *Lawley v. Northam*, Civ. No. ELH-10-1074, 2011 WL 6013279, at *19 (D. Md. Dec. 1, 2011) (*quoting Fuller v. Horvath,* 42 Md.App. 671, 685, 402 A.2d 134, 142 (1979)). Here, through the allegations in their Amended Complaint, Plaintiffs seek to assert a claim for fraudulent inducement to sidestep voluntary employment such that the well-established and well-accepted intent to harm standard does not apply.

Claims of fraudulent inducement must meet the heightened pleading standards required by Rule 9(b). As this Court previously stated with respect to this matter the first and second time it

was brought, Rule 9(b) requires that averments of fraudulent inducement be supported by stating "with particularity the circumstances" constituting fraud. Fed. R. Civ. P. 9(b); *see also Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp.,* 15 F.3d 327, 331 (4th Cir. 1994)(affirming dismissal of fraudulent inducement for failure to plead with particularity). "[I]f particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim. The court should then examine the allegations that remain to determine whether they state a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104–05 (9th Cir. 2003); *see also Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth*, 99 F.4th 928, 945 (7th Cir. 2024) ("[I]f a court thinks a plaintiff has failed to plead fraud, it must 'disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated.'") (quoting *Lone Star Ladies Inv. Club*, 238 F.3d at 368). *See* Case No. 1:24-CV-01284; Memorandum Opinion. Further, such specificity must be pled in the facts of the Amended Complaint – affidavits do not suffice to meet the specificity standard as they are not formal pleadings. Fed. R. Civ. P. 9(b); Fed. R. Civ. P. 7; *see also Miller v. Gain Fin., Inc.,* 995 F.2d 706, 709 (7th Cir. 1993) (finding that reliance on affidavits for the particularity requirement is insufficient, as affidavits are not formal pleadings).

**1. Plaintiffs Have Failed to Plead Sufficient Particular Facts to Support Their Claim of Fraudulent Inducement.**

This Honorable Court previously stated that Plaintiffs failed to meet the threshold for making a claim of fraudulent inducement with respect to their employment relationship with the City. *See Butrim v. Mayor of Balt. ("Butrim I")*, Civ. No. MJM-24-1284, 2024 WL 5055196 (D. Md. Dec. 9, 2024) at *8; *see also Butrim II*, 821 F. Supp. 3d at 519–30. In an attempt to stave off dismissal, Plaintiffs now attempt, once again, to plead that they were fraudulently induced into their employment with the City based on the City's alleged misrepresentations regarding the Code

X-Ray program ("the Program"). Am. Compl. at ¶¶ 9-34. In doing so, they seek to remove their employment from the voluntary employment context such that they may then apply a lower standard – that is, deliberate indifference – to their state-created danger claims in an effort to avoid dismissal at the pleading stage. Even with the addition of affidavits, Plaintiffs' second attempt to meet the threshold for Rule 9(b) fails for the same reasons as their first.

Rule 9(b) states that when "alleging fraud…a party **must** state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "The time, place and misrepresentation(s) upon which the plaintiffs relied must be alleged to further satisfy FRCP 9(b). Further, the identity of the person making the alleged misrepresentations must also be given, as well as what that person gained by the misrepresentation." *Vennittilli v. Primerica, Inc.*, 943 F. Supp. 793, 799 (E.D. Mich. 1996) (internal citations omitted). In order to satisfy the particularity requirement under Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *S.E.C. v. Apolant*, 411 F. Supp. 2d 271, 276 (E.D.N.Y. 2006) (internal quotations and internal citations omitted). Alleging fraudulent acts with "particularity" in order to meet the requirements of Rule 9(b) "means disclosing such matters as the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Franz v. Iolab, Inc., a div. or subsidiary of Johnson & Johnson, Inc.*, 801 F. Supp. 1537, 1541 (E.D. La. 1992) (internal citations omitted).

With regards to particularity, with respect to Rule 9(b), it serves three "important purposes:"

> First, it deters the use of complaints as a pretext for fishing expeditions of unknown wrongs designed to compel *in terrorem* settlements. Second, it protects against damage to professional reputations resulting from allegations of moral turpitude. Third, it ensures that a defendant is given sufficient notice of the allegations against him to permit the

preparation of an effective defense.

*Landon v. Am. Fam. Mut. Ins. Co.,* 293 F. Supp. 3d 879, 882 (D.S.D. 2017) (*quoting Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1010 (8th Cir. 2015)). Notably, Plaintiffs not only do not have facts sufficient in their Amended Complaint to support their claims, but openly admit that they believe discovery will provide them with the support necessary to assert those – or even other, not already plead - claims. Am. Compl. at p. 6 fn. 1; ¶31.

In the current Amended Complaint, Plaintiffs have once again failed to plead with specificity the facts required for fraudulent inducement. Instead, they accuse the City of "lying," without support or specification and include affidavits – which cannot be used to support pleading with particularly requirements - to support their claims, none of which is sufficient to vault the high hurdle required by Rule 9(b). *See* Fed. R. Civ. P. 9(b); Fed. R. Civ. P. 7; *see also Miller v. Gain Fin., Inc.,* 995 F.2d 706, 709 (7th Cir. 1993).

The City is a municipal corporation—specific human actions must be identified to plead fraud. Plaintiffs have failed at the most basic element of Rule 9(b)'s requirement that they state "with particularity the circumstances constituting fraud…" Under the rule, a plaintiff alleging claims sounding in fraud must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 731* (4th Cir. 2010) (internal citations and quotations omitted). Further, those assertions must be conveyed by the defendant to the plaintiff with some level of intent to defraud that individual. In other words, "Rule 9(b) requires plaintiffs to plead the who, what, when, and how: the first paragraph of any newspaper story." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (internal citations omitted). Here, Plaintiffs' allegations of fraud do not include any specific

facts regarding: 1) who made the allegedly fraudulent statements; 2) when the statements were made; or 3) exactly what was said. Plaintiffs' fraudulent inducement claims fail for this reason alone.

Instead, Plaintiffs attempt to support their fraud claims with the same vague generalizations previously rejected by the Court. *Butrim I*, 2024 WL 5055196, at *8 ("Here, the Complaint is silent as to the particular circumstances of the City's alleged misrepresentation, such as the time and place of the misrepresentation and the identity of the person who made it."); *see also Butrim II*, 821 F. Supp. 3d at 526–28. They allege the City "instituted a policy of keeping firefighters uninformed of [the] fact" that the Program had been discontinued and also state that the City "intentionally concealed" information regarding the status of 205 South Stricker Street as a condemned property. Am. Compl. at ¶¶ 14–15. They further allege that the City "intentionally" discontinued the Program and that information about it being discontinued was "in a fraudulent fashion, withheld." Am. Compl. at ¶ 17. Plaintiffs then fail to state any information indicating intentional behavior on the part of the City with regards to "discontinuing" the Program, nor do they provide how information was "fraudulently" withheld.

All parts of Rule 9(b) must be met to fulfill the requirements of Rule 9(b). Even if this Court finds that Plaintiffs have successfully identified individuals who made such misrepresentations, those alleged misrepresentations *must* be made "with the purpose to defraud (scienter)." *Airport Square Holdings, LLC v. GCCFC 2007-GG9 Colomary Facilities, LLC,* Civ. No. JFM-16-02883, 2017 WL 639230, at *6 (D. Md. Feb. 16, 2017) (citing *Lawley v. Northam,* Civ. No. ELH-10-1074, 2011 WL 6013279, at *9 (D. Md. Dec. 1, 2011). That is, the Plaintiffs must provide that the City or its representatives acted with specific intent to defraud those that were injured and must plausibly allege as such. Here, Plaintiffs have failed to do so, instead

utilizing inflammatory and sensationalized language to support their claims in an effort to subvert the pleading standard.

Other than the broad claims that the City "lied" and "concealed information," in an effort to support their fraudulent inducement claims, Plaintiffs have also attached an affidavit from Plaintiff McMaster in an effort to support their fraudulent inducement claims. *See* ECF 26-1. Ignoring the fact that the affidavit is not in the proper format, it also fails to provide information indicating that Plaintiff McMaster relied *specifically* on an assertion from the City with regards to the Code X-Ray program when the City offered him employment and he accepted. *See* Md. Rule 1-304 (providing proper form and language for an affidavit). McMaster's affidavit generally identifies three individuals who allegedly made statements regarding the Code X-Ray program – an instructor at the fire academy, an EMT trainer, and a lieutenant, but declines to provide any names, so the City has no way to verify these claims. *Id*. McMaster states these individuals generally informed him "of the existence of the program" in September of 2015 with respect to the former two and in spring of 2017 with respect to the latter. *Id*. McMaster's affidavit does not state that he was ever explicitly told that the program was active, or the extent to which it was, or was not, utilized. He does not swear, as alleged in the Amended Complaint, that he was specifically told he would never enter an unsafe building, an assurance it would be impossible to make to any firefighter. He also makes no statements regarding any benefit that the individuals who made the alleged misrepresentations would have gained by conveying such information. In that same thread, the Amended Complaint is likewise devoid of such allegations beyond the City trying to prevent a "mass exodus" from the Baltimore City Fire Department – a claim that is devoid of any support beyond general speculation.

Instead, the affidavit states that he "*understood these* representations to mean that the

program was being utilized" and that "we would not enter unsafe dwellings if they were 'exterior operation only/Code X-Ray.'" *Id*. (emphasis added). He also states he "relied on these representations when [he] accepted his job" and "had [he] known of the misrepresentation of the existence, implementation, enforcement, and continuation of the Code X-Ray program, [he] would have resigned as a Baltimore City Firefighter." *Id*. In short, what this affidavit provides is that three unnamed individuals at some point *after he had accepted employment with the City* stated to him that the Code X-Ray program existed. *Id*. However, nowhere do Plaintiffs provide any indication – in either their proposed Amended Complaint or in any affidavit – that any of the alleged representations were made with the *intent* to defraud them into accepting employment with the City or remain employed by the City.

McMaster's affidavit also states that had he or "his fellow firefighters" known about the discontinuation of the program, they would never have entered 205 South Stricker Street on the day of the incident. *Id*. But neither the Amended Complaint nor the affidavit contains any facts describing what other firefighters were told about the program, when they were told, or by whom. Barring the fact that Plaintiff McMaster *cannot* affirm what other parties would have done, this assertion still does not rise to the level of a fact that can be averred to. Finally, even with the inclusion of this affidavit, Plaintiffs' claims with respect to fraudulent inducement still fail as pursuant to Rule 9(b), affidavits do not support the pleading with particularity requirement. *See* Fed. R. Civ. P. 9(b); Fed. R. Civ. P. 7; *see also Miller v. Gain Fin., Inc.,* 995 F.2d 706, 709 (7th Cir. 1993). Two other notable affidavits[3] are included with Plaintiffs' Amended Complaint – one from Joseph DiRusso and another from Matthew Coster. Not only are these individuals not parties to this action,

[3] Plaintiffs have also included affidavits from family members of the deceased Plaintiffs in this matter. As the individuals who completed those affidavits do not have personal knowledge of what the deceased Plaintiffs would have done in any set of circumstances, those affidavits must be stricken.

their affidavits also provide no indication that the information contained in them was conveyed to any Plaintiffs prior to their acceptance of employment. They speak in general terms about the conduct of the "administration" and the understanding of "rank-and-file members" – which they cannot personally aver to - without specifically identifying anyone who allegedly made any particular misrepresentations. Specifically, the affidavits reference events from 2010 to 2012, when Plaintiff McMaster was not yet employed by the City of Baltimore.

There are no statements made in the Amended Complaint or in any affidavits that Plaintiff McMaster or the other Plaintiffs were aware of this information prior to their employment. Beside the fact that these two individuals are attesting to information that has no bearing on whether or not the specific Plaintiffs in this action were fraudulently induced into employment with the Baltimore City Fire Department, their affidavits also contain zero statements indicating that such information regarding the Code X-Ray program was "fraudulently" withheld. Rather, their affidavits merely state that they were both aware of it and that at some point in time it was discontinued. They provide no specific information regarding when it was discontinued, why it was discontinued, or how any such information regarding it being discontinued was (or was not) disseminated. Finally, they provide no information that any individuals – whether the Plaintiffs or other firefighters – hinged their continued employment on the existence or non-existence of the Code X-Ray program. Their affidavits are red herrings – designed to distract the Court from the fact that Plaintiffs have still failed to properly allege a claim of fraudulent inducement with respect to their employment with the City. Such averments do not meet the pleading standard required by Rule 9(b) with respect to particularity. Further, and most importantly, said information would *still* need to be disseminated with *intent* to defraud those who it was directed towards. In the absence of this intent, Plaintiffs cannot meet the requirements for a claim of fraudulent inducement under Rule 9(b).

Perhaps the crux of Plaintiffs' fraudulent inducement claim is their wildly speculative statement that "the City lied about Code X-Ray to firefighters including Plaintiffs…to prevent a mass exodus from BFD in addition to creating an environment that forced Plaintiffs and other firefighters to fight all fires from an interior approach as opposed to having a 'reason' for not entering a dwelling on fire." Am. Compl. at ¶ 23. This particular assertion demonstrates precisely that Plaintiffs are *unable* to support their claims with any specificity and why they are unable to provide any allegations regarding the requirement for some level of intent – even in the general sense – with respect to any actions or inactions of the City. Rather, they reduce their allegations to accusations of "lying" and speculation about the City's actions. As discussed *supra*, Plaintiffs must allege that the City intended to deceive them *specifically* – presumably in both the employment context and in the context of performing their duties as firefighters. Rather than doing so, they instead come just short of accusing the City of maintaining a vast conspiracy to conceal information about the Program in order to "trick" firefighters into remaining employed with the City so that the City can purposely send them into dangerous structures. This is further bolstered by Plaintiffs' superfluous inclusion of statements regarding political corruption in the City and "schemes" with developers to develop low-income areas. Compl. at ¶¶ 63–74.

As stated, Plaintiffs' claims of fraudulent inducement rest on their assertions that the City made intentional misrepresentations regarding the Code X-Ray program. ECF 21-1 at ¶¶ 34–35, 44 *see also* ECF 21-3, Affidavit of John McMaster. The key to success with this assertion is that the City *intended* to misrepresent the continued existence of the program, that said misrepresentation was intended to defraud the Plaintiff firefighters into accepting and continuing their employment with the City, and that through that fraud the City intended the outcome that occurred in this case, that is harm to Plaintiffs. *Campbell v. Indymac Bank, FSB*, Civ. No. CCB-

09-3182, 2010 WL 419387, at *3 (D. Md. Jan. 29, 2010) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–84 (4th Cir.1999)) ("[A]s intentional misrepresentation is a claim based in fraud, it is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."). As such, assertions of fraudulent inducement in this regard require particularity, which means Plaintiffs must detail "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co*., 176 F.3d at 784 (*quoting* 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)). Here, even with the inclusion of the affidavits attached to the amended Complaint, Plaintiffs have still not provided the particularity required for a fraudulent inducement claim.

**e. Plaintiffs' Amended Complaint Must be Dismissed Because a *Monell* Claim Cannot Stand Alone**

A *Monell* claim must be supported by an allegation of a constitutional violation by a government employee. It is "axiomatic that a *Monell* claim cannot lie where there is no underlying constitutional violation by the employee." *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 459 (D. Md. 2020) (citations and quotations omitted). "No actionable claim against supervisors or local governments can exist without a constitutional violation committed by an employee." *Anderson v. Caldwell Cty. Sheriff's Office*, 524 F. App'x 854, 862 (4th Cir. 2013). "Municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer,' at least in suits for damages." *Waybright v. Frederick Cnty., MD*, 528 F.3d 199, 203–04 (4th Cir. 2008) *citing City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571; *see also Grayson v. Peed,* 195 F.3d 692, 696 (4th Cir.1999).

Here, no constitutional claim has been alleged against any City employees. The only Defendant named in Plaintiffs' Amended Complaint is the Mayor and City Council of Baltimore.

No individual employee of the City is named as a defendant, and there are no allegations of an underlying constitutional violation committed by any City employee. As such, Count I of Plaintiffs' Amended Complaint fails to state a claim and must be dismissed.

## II. Plaintiffs' State Law Claims Should be Dismissed as a Matter of Law

### a. Plaintiffs' State Law Claims are Covered by the Maryland Workers' Compensation Act

The WCA provides compensation to employees injured in workplace accidents or, in the case of death, to the dependents of the covered employee. Md. Code Ann., Lab. & Empl. § 9-501. Recipients need not prove fault to collect under the WCA: the act provides a "no-fault compensation system for employees and their families for work-related injuries." *Polomski v. Mayor & City Council of Baltimore*, 344 Md. 70, 76 (1996). The WCA not only serves to compensate workers and their dependents, but also "protect[s] employers from the unpredictable nature and expense of litigation, and the public from the overwhelming tax burden of caring for the helpless human wreckage found [along] the trail of modern industry." *Id.* (quotation omitted).

In exchange for this "certain, efficient, and dignified form of compensation," an employee "abandon[s] common law remedies, thereby relieving employers from the vagaries of tort liability." *Id.*; *see also* Md. Code Ann., Lab. & Empl. § 9-509(b) ("the compensation provided under this title to a covered employee or the dependents of a covered employee is in place of any right of action against any person"). The "[c]ompensation awarded on this fault-free basis under the statutory plan substitutes for an employee's common law right to bring a fault-based tort against an employer for damages resulting from the employee's injury." *Mayor & City Council of Baltimore City v. Johnson*, 156 Md. App. 569, 587 (2004), *aff'd,* 387 Md. 1, 874 A.2d 439 (2005); *see also Bd. of Educ. of Prince George's Cty. v. Marks-Sloan*, 428 Md. 1, 36–37 (2012). As such, "compensation pursuant to the Act is ordinarily an injured employee's exclusive remedy

with respect to the employer." *Johnson*, 156 Md. App. at 587.

The only limited exception to this rule of exclusivity is when an employee is "injured or killed as a result of the deliberate intent of the employer to injure or kill the covered employee." Md. Code Ann., Lab. & Empl. § 9-509(b). Maryland jurisprudence makes clear that to "bypass the exclusivity provided by a workmen's compensation statute . . . the complaint must be based upon allegations of an intentional or deliberate act by the employer *with a desire to bring about the consequences of the act.*" *Johnson v. Mountaire Farms of Delmarva, Inc.*, 305 Md. 246, 255 (1986) (emphasis added). A complaint that alleges intentional acts leading to an accidental injury or death is insufficient, because "[w]hile an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it." *Id.* This exception therefore applies only in the unusual circumstance where an employer deliberately and intentionally harms their employee.

Important here, allegations of an employer's willful or knowing behavior, gross negligence, or violation of a safety statute do not fall under the "deliberate intent" exception. As described by the Court of Appeals of Maryland:

> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, *wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.*

*Id.* at 254 (emphasis in original) (quoting Larson, *The Law of Workmen's Compensation* § 65.11 (1983)). This principle was reiterated more recently by the Fourth Circuit in *Gantt v. Sec., USA*, where the court noted that "[p]roof of an employer's willful, wanton, or reckless conduct even when that conduct is undertaken with a knowledge and appreciation of a high risk to another does not suffice to bring employer's conduct within intentional tort exception to Maryland Workers' Compensation Act's normal exclusivity rule." 356 F.3d 547, 555 (4th Cir. 2004) (citations and

quotations omitted).

It is undisputed that the accident in this case took place in the course of Plaintiffs' employment with the City and therefore falls under the WCA. It is also clear that the accident does not fall under the WCA's "deliberate intent" exception. Even if taken as true, the claims in Plaintiffs' Amended Complaint describe only negligent actions by the City. Plaintiffs' claims are based on allegations that the City "intentionally disregarded" the risk posed to firefighters working for the City with regards to the potential danger of vacant buildings. Am. Compl. at ¶ 31. The Complaint further relies on the allegation that "the City created the danger" through its neglect of the Property and failure to warn of any potential danger, "and then intentionally exposed the Plaintiffs to that danger." *Id*. at ¶ 32. Plaintiffs also allege that they were "promoted" to enter the building "regardless of the risks associated" with the structure. *Id*. at ¶ 42. These claims, like those in *Cunningham,* all rely on an OSHA report regarding the potential dangers of vacant buildings. *Id*. at ¶ 28. They also claim the City's actions with respect to the Program were linked to the Plaintiffs' entry into the Property and their subsequent injuries, as they claim the City improperly discontinued the program and failed to inform them of this alleged fact.

None of these allegations are sufficient to bypass the exclusivity provision in the WCA. Nowhere does Plaintiffs' Amended Complaint allege that the City Defendants deliberately intended to cause the deaths of Plaintiffs Butrim. Sadler, and Lacayo or that the City deliberately intended to cause injury to Plaintiff McMaster. While the Amended Complaint generally mentions that the deaths and injuries were due to the "intentional decisions" of the City Defendants, it does not claim that the City Defendants intended the alleged consequence of those decisions, as is required under Maryland law. Am. Compl., *passim*; *see also Johnson*, 305 Md. at 255. Indeed, Plaintiffs cannot make this claim, as the Amended Complaint asserts negligence, wrongful death,

and survival actions, supported by the allegations that the deaths and injuries were caused by what amounts to a failure to warn Plaintiffs that the Property presented a hazard. The Complaint does not assert recklessness or gross negligence, although even those claims would also be insufficient to bypass WCA exclusivity. No intentional torts are claimed. The Amended Complaint clearly details an accident that occurred during the Plaintiffs' employment with the City. Nowhere does it suggest that the City Defendants undertook the criminal act of intentionally causing the deaths of Plaintiffs Butrim, Lacayo, and Sadler or the injuries of Plaintiff McMaster. Therefore, Counts II, III, and IV must be dismissed with prejudice and without leave to amend.

**CONCLUSION**

For the reasons stated herein, the City respectfully requests that this Honorable Court dismiss Plaintiffs' Amended Complaint against the City in its entirety, with prejudice and without leave to amend.

Dated: August 24, 2026

Respectfully submitted,

EBONY M. THOMPSON
City Solicitor

/s/ *Hanna Marie C. Sheehan*
HANNA MARIE C. SHEEHAN (#19531)
Chief Solicitor
Baltimore City Law Department
100 Holliday Street, Suite 101
Baltimore, Maryland 21202
Phone: 410-396-4431
Fax: 410-547-1025
Hanna.Sheehan@baltimorecity.gov
*Counsel for Defendant Mayor and City Council of Baltimore*